(No. 5669—

EASTERN ILLINOIS TELEPHONE CORPORATION, Claimant, *v.* THE
STATE OF ILLINOIS, Respondent.

*Opinion filed August 22, 1980.*

RICHARD P. OPSAHL, for Claimant.

WILLIAM J. SCOTT, Attorney General (WILLIAM E.
WEBBER, Assistant Attorney General, of counsel), for
Respondent.

HOLDERMAN, J.

This case arises as a result of duplicate payment of a
franchise tax by Claimant to the Secretary of State of
Illinois.

The parties in this case entered into a stipulation of

1

facts filed in the Court of Claims on March 4, 1975. Claimant, Eastern Illinois Telephone Corporation, is a corporation resulting from a merger of four separate telephone companies. This corporation was created for the purpose of becoming the surviving corporation of the merger.

As of December 31, 1967, E.I.T. Corporation had a stated capital of $1,000.00 and no paid-in surplus.

After the merger which occurred on January 4, 1968, E.I.T. Corporation changed its name to the Eastern Illinois Telephone Corporation and had a stated capital and paid-in surplus of the surviving Corporation of $2,838,350.00. This figure was the sum of the stated capital and paid-in surplus of the five separate companies prior to the merger.

The stipulation of facts entered into is as follows (exhibits referred to were attached to the stipulation):

"Now comes the Claimant, Eastern Illinois Telephone Corporation, an Illinois Corporation, by Allen and Korkowski and Associates, its attorneys, and the State of Illinois by William J. Scott, Illinois Attorney General, and stipulate to the following:

1. Prior to January 4, 1968 the following four Illinois companies or corporations were operating companies actively engaged in the telephone business in the State of Illinois:

CT & N Telephone Company
Eastern Illinois Telephone Company
Hoopeston Telephone Company, Inc.
Champaign County Telephone Company

2. Prior to December 31, 1967 E.I.T. Corporation was incorporated as an Illinois telephone company for

the purpose of becoming the surviving corporation of a merger of the above four corporations with E.I.T. Corporation.

3. On December 31, 1967 E.I.T. Corporation had a stated capital of $1,000.00 and no paid-in surplus.

4. On January 4, 1968 the five companies merged with a stated capital and paid-in surplus totaling $2,838,350.00, this being the sum of the stated capital and paid-in surplus of the five separate companies prior to the merger.

5. Upon merger (January 4, 1968) E.I.T. Corporation became the surviving corporation and the corporation name was changed to Eastern Illinois Telephone Corporation.

6. Following the January 4, 1968 merger a 'Report of Stated Capital and Paid-in Surplus Following Merger or Consolidation' was filed with the Secretary of State, pursuant to Ch. 32, Par. 157.99, 1967 Ill. Rev. Stats. listing the stated capital and paid-in surplus of the surviving corporation to be $2,838,350.00 (See Exhibit 1 attached).

7. The Secretary of State then billed the claimant for $2,837.35 through their attorney. (See Exhibit 2 attached)

8. By letter dated February 2, 1968 from claimant's attorney, Jon R. Lind, of Isham, Lincoln and Beale, attached hereto as Exhibit 3, claimants were informed, in part, as follows:

'Also enclosed is a copy of a letter which I just received from the Secretary of State requesting an additional check for $2,837.35 in payment of the franchise tax for the surviving company. This amount covers the franchise tax from July 1, 1968 through June 30, 1969. When you receive the Annual Report form for E.I.T. Corporation, you should file it showing the stated capital of $1,000.00, since the annual report refers to the status of the corporation as of December 31, (sic) 1972' (actually 1967).

9. The information and instructions contained in Mr.

Lind's letter cited in paragraph 8 above were true and correct.

10. The claimant then paid an 'additional franchise tax' of $2,837.35 (Exhibit 4), said additional franchise tax being paid pursuant to Ch. 32, Par. 157.131 (c), 157.133, 1967 Ill. Rev. Stats. on the increase in the stated capital and paid-in surplus of the four operating companies being added to the $1,000.00 of stated capital of the former E.I.T. Corporation. (See Exhibit 5 attached)

11. As per paragraph 10 above, the pertinent part of Ch. 32, Par. 157.131 (c) reads as follows:

'° ° °; and in addition, if the merger or consolidation becomes effective on or after January 1 and before July 1 of any year, the surviving or new corporation shall be liable for a further additional franchise tax (1) on the increased amount represented in this State of the resulting stated capital and paid-in surplus of the surviving corporation over the amount of its stated capital and paid-in surplus immediately prior to the merger, ° ° °'.

12. Upon receipt of the Annual report form mentioned in Mr. Lind's letter, as set forth in Par. 8 above (Exhibit #3), the claimant, contrary to Mr. Lind's instructions, altered the form by crossing out the name 'E.I.T. Corporation' and inserting the name 'Eastern Illinois Telephone Corporation', and instead of submitting the 'Annual Report' form on the $1,000.00 stated capital of E.I.T. Corporation as of December 31, 1967, the claimant filled it out in such a way as to indicate that 'Eastern Illinois Telephone Corporation' had $2,838,350.00 in stated capital and paid-in surplus on December 31, 1967. (See Exhibit 6 attached)

13. As per the information contained in the erroneous Annual Report above referred to, the Secretary of State billed the Claimant for $2,838.35 (Exhibit 7 attached hereto).

14. In accordance with the billing referred to in Par.

13 above the claimant paid without protest the sum of $2,838.35 by check dated May 17, 1968. (Exhibit No. 8 attached hereto)

15. By letter dated May 24, 1968, Eastern Illinois Telephone Corporation informed the Secretary of State of claimant's mistake and requested a blank Annual Report form for the purpose of filing an Amended Report. (Copy attached as Exhibit 9)

16. After a search of their records the Secretary of State's office answered by letter dated June 18, 1968 informing claimant that their remedy lies with the Court of Claims. (Copy attached as Exhibit 10)

17. This stipulation of facts is submitted by the parties hereto in lieu of a hearing, which is hereby waived.

18. The parties hereto agree to follow this stipulation with the submission of briefs in accordance with Rules 17, 18 and 19 of this Court."

According to the stipulation, the Secretary of State, under date of February 1, 1968, billed the corporation for a franchise tax in the amount of $2,837.35. This payment was made by Claimant by check dated January 31, 1968. Subsequently thereto, as shown by Exhibit 6, Claimant paid a $15.00 fee which covered the filing fee required for the annual report of Claimant.

The Secretary of State's office, under date of May 15, 1968, sent Claimant a second bill for $2,838.35 even though the State had already collected once for the same period of time. This bill was paid by Claimant on May 17, 1968.

When Claimant discovered the error of its second payment, it wrote to the Secretary of State's office and

requested a refund at which time it was informed by the Secretary of State's office that their only recourse would be to secure a refund through the Court of Claims.

Respondent takes the position that due to the fact that the tax was not paid under protest by Claimant, Claimant is not in a position to receive any refund from these transactions.

Claimant's position is that the overpayment is the result of wrongful billing by the Secretary of State's office and they should be refunded one payment.

In the case of *Savin Business Machines Corp. v. State*, 30-CC-612, this Court set forth the principle that under the facts set forth there, no refund of taxes voluntarily paid could be made unless they were paid under protest.

While we adhere to that decision, it is our opinion that the present case is unusual. Here, the taxes were paid by inadvertence as the result of an error by Respondent. There would never be a second payment "under protest" in a case of this sort.

To sustain the position of Respondent that the Claimant is not entitled to any relief would put the Court in a position of approving a double payment of this franchise tax. This would result in a situation with serious consequences. Certainly, this Court should not knowingly encourage, aid or abet the Respondent in profiting from an error. This would be unconscionable.

Award is hereby entered in favor of Claimant in the amount of $2,838.35.